Beockenbrotjgh, J.
The first question discussed in this case, was much investigated at the bar and by this court, in Brent v. Green. The court adopted the decisions in Emmerson v. Heelis, 2 Taunt. 46. and White v. Proctor, 4 Taunt. 211. as settling the law, that in sales at public auctions, the auctioneer was to be considered as the lawfully authorized agent of the purchaser as well as of the vendor, and that a note or memorandum *171 in writing of the agreement between the vendor and vendee, signed by such agent, was a sufficient signing within the statute of frauds, and was binding on both parties.
The objection that the memorandum in this case was signed, not by the auctioneer but by the clerk, ought not, I think, to prevail. He was the clerk of the auctioneer,—his amanuensis,—and wrote the memorandum on the account of sales by his direction and under his superintendence. In all extensive auction sales, a clerk is indispensably necessary, and the employment of one is safest for both vendor and vendee. Great inconvenience would be experienced, and much mischief done, if we were to decide, that a memorandum signed by the auctioneer’s clerk, was not as complete a compliance with the statute, as the signature by the auctioneer himself.
The remaining question is, whether the memorandum of the sale, made as it was by the lawfully authorized agent of the purchaser, be a sufficient memorandum or note of the contract for the sale of the land in the bill mentioned, to charge the defendant, and to entitle the plaintiff to a specific execution of the contract. The cases of Hinde v. Whitehouse and Kenworthy v. Scofield, were relied on to shew, that when such memorandum is made, the terms or conditions of the sale should either be embraced therein, or that the written or printed paper which contains the conditions of sale, should be annexed to the paper on which the memorandum is made, and before it is made, or be referred to by it. I admit that those cases are very strong to that effect; yet I do not think they should govern this case. I am of opinion, that the memorandum before us does contain the terms or conditions of the sale. Take the memorandum by itself, without referring to the parol evidence, and every one would understand, that Smith did purchase The Fox tract of land, for $ 4 10 per acre, pay *172 able in ready money. The terms of the sale, then, are expressed in the writing. The defendant bound himself to pay in cash. If it is alleged, that the memorandum does not contain the true terms, 1 admit it. But the mistake or falsehood in the memorandum does not invalidate the contract under the statute of frauds and perjuries. The statute is complied with. If the vendor had claimed a specific performance of this contract for cash, equity would have relieved the vendee, not because the statute was not complied with, but because of the mistake as to the terms, or the fraud of the vendor in stating false terms; and it would allow the vendee to give parol evidence of that mistake or falsehood. There is, however, no necessity for such relief here, because the vendor has in his bill honestly stated the true terms, and they are more favourable to the vendee than those contained in the memorandum. He cannot complain of the mistake, as it is rectified by the plaintiff in his bill, and there is no ground to charge the plaintiff with fraud.
I think the decree should be affirmed.
Garb, J.
Two questions were raised and well discussed, in this case : 1. Was there a signing within the statute of frauds ? 2. Was the contract so certain in its terms as to authorize a specific execution ? Upon the first question we were referred to the case of Brent v. Green; where a deputy sheriff, acting for the high sheriff, under our insolvent law, sold at auction the interest of an insolvent debtor in a tract of land contained in his schedule, and when the land was knocked down to the purchaser, he wrote on the schedule the price of the land, and the purchaser’s name : and we decided, on a full discussion, and reference to all the authorities, that this was a sufficient signing of a memorandum in writing under the statute, to bind the purchaser. That case is exactly in point to this, as to the signing; for *173 here, there was a sale at public auction, of many such , . articles of property as are for sale when a farm is broken up, and the land itself was also sold. The sales were conducted by Knox the agent of Jones. A regular account of sales was kept by the clerk, who set down the sale of the land, the price, and the name of the purchaser. Here, then, is the name of the purchaser set to a memorandum in writing, stating that he had bought The Fox tract of land at $ 4 10 per acre; and his name thus signed by the auctioneer. 1 shall not go over again here, the numerous cases which settle the question that the auctioneer is an agent for the vendee authorized to sign his name ; but 1 will just repeat what is so briefly and strongly said by Mansfield, C. J. in Emmerson v. Heelis, 2 Taunt. 46. “ By what authority does he (the auctioneer) write down the purchaser’s name ? By the authority of the purchaser. Those persons bid, and announce their biddings loudly and particularly enough to be heard by the auctioneer. For what purpose do they do this ? that he may write down their names opposite to the lots; therefore, he writes the name by authority of the purchaser, and he. is an agent for the purchaser; and it does seem, therefore, that this is a contract, signed by an agent for the purchaser, and consequently binding.”
It was objected, that the name was not written by the hand of the agent but of his clerk. The cases consider this as making no difference, the clerk acting immediately under the eye of his principal. In White v. Proctor, Mansfield, C. J. answers an objection of this kind thus—“ If an agent has cut his finger so that he cannot write, and says to another, write down my name, will not that signature bind the principal ?”
The second question is, whether the memorandum has sufficient certainty to authorize its specific execution. The two cases above cited say, that entering the name of the buyer in the auctioneer’s book, is just the *174 same thing as if the buyer had written his own name. ° i . . . bup'pose, then, we throw this agreement mto the form ^ would have assumed, if written by Smith himself: “Memorandum, that I, J. Smith, have bought of W. Knox agent for W. Jones, The Fox tract of land, at $4 10 per acre. (Signed) J. Smith.” It will be seen, that there is not a single term here, which is not stated in the heading of the account of sales, and the entry of the sale of the land. Now, to my mind, this presents an agreement sufficiently certain for specific execution. The thing bought and sold, the terms of sale, and the buyer are distinctly set forth. It is objected, that we are not told whether it is a sale for cash or credit. I question much, whether this objection would have occurred, even to the acute mind of the counsel, if the bill had not stated, that the terms in the advertisement were twelve months credit. But this statement is not supported; we see nothing of the advertisement; it is in no way made part of the case. Whether to supply it by parol proof would have been permitted, is a question which does not arise, as no such attempt was made-. Taking the memorandum on its face, it presents no such uncertainty. There being no time limited either for paying the price or executing the deed, the conclusion is, that either party may presently insist on carrying the contract into execution. The vendee might tender his money and demand a deed, or the vendor tender his deed and demand the money, without delay. It will be remembered, that this is not an objection that the allegata and probata do not agree; that the plaintiff has not properly described the agreement; but that the agreement itself, as it actually exists, is not sufficiently certain to take the case out of the statute of frauds. If we look at the many english cases which have been decided on this point, I think we shall find few with more certainty, many with less, that have been supported by the courts : in my opinion, Emmerson v. Heelis *175 and White v. Proctor, have not more. If we look into • our own cases, we find several with less certainty than this, specifically executed. I shall only refer to Johnson v. Ronald’s adm’r.
Cabell and Bkooke, J. concurred. Decree affirmed.